Thank you. Please be seated. In honor of the third case of the morning, code 209-256, People's State of Illinois v. Lamont Stewart. On behalf of the Appalachian, Mr. Ryan Wilson. On behalf of the Appalachian, Mr. Jerry Jacobs. Good morning, counsel. Mr. Wilson. May it please the court, counsel. My name is Ryan Wilson. I'm an attorney with the Office of State Development Defender in Springfield here for Lamont Stewart. Mr. Stewart's appeal really presents what I think are two central issues. You have Issue 1 in the brief, which is a conflict of interest issue. And Issue 2, which is a public trial issue. I'm going to begin by talking about Issue 2, as I believe it's the more complex kind of all-encompassing issue. And it also lends itself well to discussing the other two issues. It's important to know that Mr. Stewart's post-conviction petition was dismissed at the second stage of post-conviction proceedings. The standard applicable at that stage is that his allegations are to be construed as true and was positively rebutted by the trial record. And in this case, the trial record does not rebut his allegation that his family members were required to sit out in the hallway during Boyd-Dyer due to limited seating in the courtroom. There is absolutely nothing. The record is completely vacant of any information that would say that he is making that up or that is not a correct statement of what happened at his Boyd-Dyer. There are things that are clear from this record. One, the seating was extremely limited. And we know that because during the beginning of Boyd-Dyer, the defense counsel brought to the judge's attention that a member of the court security, it was a deputy or a sheriff, had asked her to lower the number of family members who were in the courtroom. It's described at that point, I believe later on, both as the chair situation and because of the limited seating. So we know that there's some issue going on regarding chairs in the courtroom or an absence thereof and an absence of places for people to sit in the courtroom. Well, the court didn't order anyone excluded from the courtroom, did it? Not directly. It's almost a de facto exclusion in that the court certainly didn't do anything to accommodate those family members. And was there a specific request made? There was no specific request made, but pursuant to Presley v. Georgia, it's incumbent, it's a sua sponte duty. The Supreme Court, it was a 2010 decision, said that the right to a public trial is so important that even if it's not raised by the parties, the court needs to ensure that a defendant is given that right. It was brought to the court's attention, though, that these family members were in the hallway. And as I said, the court didn't do anything to see that those family members were accommodated. Now, were there any affidavits presented by the family members or anyone who was excluded in the hall? Not during the second stage of post-conviction proceedings. However, we do have extensive argument during the hearing on the state's motion to dismiss the post-conviction proceeding. And one of the things that the state itself said was, after talking about the representations the defense counsel had made, and according to the state, what is clear from this language at least, from what Ms. Colton is explaining to the court, is that there was a request to have some family members not come in because there weren't enough chairs. And so it even seems that the state is agreeing that, okay, based on what I'm seeing here, it looks like there just weren't enough chairs and so these family members weren't allowed to come in the courtroom. And that's where I say it's like a de facto closure in that the court didn't say the family members need to be excluded from the courtroom. However, the court also didn't accommodate them. What if you don't have enough chairs and you have like 100 family members? I mean, is the court supposed to run an auditorium to make sure that – or do the jurors sit outside and all the family members sit in the courtroom? I guess I have several answers to that because the cases are kind of all over the map with a question like that. The court only has to make a reasonable accommodation. And it's a question of is the accommodation that's present in the courtroom de minimis or is it adequate to see that the defendant's public trial right is carried forth? In this case, I'd argue it's de minimis based on what we know about the limited seating. What the court could have done or what the court might do in a similar situation, apparently because of this chair situation, the spectators were to sit in chairs and be seated. Maybe the court could have said, okay, I know I've got 10 family members out in the hallway. They can stand in the rear of the courtroom if they'd like to observe the proceedings. He could say, let me inquire into whether we can move these proceedings to a larger courtroom. He could also say, you know, is there a closed-circuit television-type system where I can put these family members in an adjoining courtroom and they can view the proceedings in that manner? Certainly, though, the answer is not to say there's nothing I can do about it because the defendant's constitutional right in this area is just too important. But no one was excluded from the courtroom in this case as opposed to some of the other cases that I believe you've cited. Inferentially, I believe that the record does show people were excluded. And I say that because defense counsel's representation to the court was a sheriff or a deputy has come to me and asked me to lower the number of family members in the courtroom. Obviously, if you're being asked to lower the number of family members in the courtroom, there must have been a lot of family members in the courtroom. Maybe these 10 people were in the courtroom. And the deputy walks up and says, I'm sorry, you know, due to the limited scene, we're going to have to reduce the number of people here in this courtroom. And as a result, inferentially, somebody left the courtroom or else there would be no reason for the deputy to make that request of defense counsel. But we don't know who left the courtroom. We do not know who left the courtroom. Do you know who these family members were? Because, you know, the case law that talks about, which I know is not on the point here, but the case law that talks about when we exclude everybody when a child is testified. Sure. We have to allow the press and we have to allow family members of the defendant. But that only goes so far in the case law. I know it goes to spouses and it goes to parents, but it doesn't go to second cousins. In Presley v. Georgia, it was an exclusion of the defendant's uncle, for instance. A lot of the cases that I have cited do talk about, you know, siblings and sisters and I believe there's some, you know, parents and that sort of thing. I don't know that there's a limitation on, you know, family lineage or, you know. But we still don't know who these people were on this record. Other than their relatives. That's correct. Right. So we don't know. That's correct. Okay. They did eliminate, I think, police officers or something. Apparently, after this request had been made to lower the number of family members in the courtroom, it seems like they had progressed through some jury selection and then there was a break in the proceedings. When the proceedings reconvened, a police officer had occupied one of the chairs in the courtroom. Defense counsel noted that to the court and said, Your Honor, I've been asked to lower the number of family members that I have in the courtroom and now there's a police officer occupying one of those chairs. She presented it as though it was an issue of intimidation because, I'm guessing at least, because the defense case involves the attempted murder of two police officers. But her objection seems to be, I have family members who want to be in the courtroom. We have a police officer here who, you know, isn't a party. Nobody specifically requested that he sit here, as far as we know, but yet he's occupying a seat in the courtroom while these family members are out in the hallway. Is that how she worded it, or did she word it as intimidation? That's what I said. She worded it as intimidation. Yeah, so you're extrapolating from that. You're saying, well, I think it's because there weren't enough family members. Sure. That's quite a jump. Well, not that there weren't enough family members. Oh, where the family members were excluded. Right, right. But, I mean, aren't you making quite a leap from what she said, that they're excluded because of intimidation? And now you're going to, well, my guess is it's because there weren't family members still. Well, no, I think that her primary concern was that she was worried about the intimidation. That's the way it is presented in the record. If, and granted, one of the, you know, this whole issue is framed as counsel's ineffectiveness for failing to preserve this. There's some question of whether it has to be preserved or if it's even possible to be waived. But, certainly, that is an inference I'm making from the record. But it would also seem to be one of the, you know, complaints that defense counsel. It would seem odd if I was an attorney and I've been asked to exclude family members of the defendant, and then a non-party who apparently hadn't been part of the proceedings earlier was sitting in the chair. It seems like I wouldn't link that to the court due to the exclusion of these ten family members who were in the hallway. But, yes, at the end of the day, it is an inference that I'm making based on this record. Counsel, why don't we turn to the other issue? Yes. So we don't run out of time with respect to that. Thank you. Isn't, with respect to this other issue that is the conflict issue, wasn't the trial court assured by the public defender here that there was no conflict and wasn't that sufficient? The representation that the public defender made when he took over the case, I believe, was the public defender can enter their appearance or something like that. There's no reference to this past possible conflict. The judge doesn't ask about the possible conflict. And one of the things that is pretty clear from the record was that when Rachel Hess withdrew, she was the second conflict attorney. And Donald Lorig entered his appearance. He's the public defender. The defendant wasn't present in court that day. And so there's nothing you can say. And the defendant knew what was going on. And the defendant really was the only party, and I want to make sure I'm right before I say this, the defendant was the only party that still remained in the case who was there originally when this conflict issue came up. Originally he was represented by Ms. Colton. There was a different judge. And actually I'm not sure if it was the same state's attorney or a different state's attorney. But once you have a different public defender, a different judge, it's easy to either forget or overlook this possible conflict issue. And that's why it's so important to say, Counsel, in looking back through the record, I see that early on there was a concern made both by the public defender, actually the way that the court framed it was in referencing the post-conviction petition, was public defender, obviously I take it you're not coming out on this case, I assume, or something like that. And that is such a blunt statement. It's almost as if it's, I looked at this, and I'm guessing that based on the allegations it's made, maybe you're not entering your appearance here. You're saying that with respect to the trial judge who originally appointed Conflict Counsel? That's correct. Okay. That's correct. And then somewhere, I don't remember how long it was in the proceedings, a different judge I believe took the proceedings over. And it was that judge who oversaw Mr. Lorick's representation of the defendant. And it would have been important for that judge to look through the record again and say, hey, whatever happened to this? Is there still a conflict? And that's very important in this case because ultimately if, you know, even with the public trial issue, if that gets remanded for third stage evidentiary hearing, then it's really important to make sure that whichever attorney represents the defendant in the lower court still doesn't have this conflict of interest. And so that's where those two issues really work hand in hand in that if the judge questions the parties and says, Mr. Lorick, there was this concern early on that maybe there was a conflict of interest, if there still is that concern or if there is a conflict of interest, the defendant's post-conviction petition needs to be vacated and refiled. And you would agree that on this record there is no actual conflict established? On this, I would agree with that. The only subtle thing I would disagree about is it is clear in the post-conviction petition that the defendant is alleging the ineffectiveness of his public defender, and then ultimately it is the public defender who ends up representing him in post-conviction proceedings. But we know that there has to be an inquiry on that because simply if it's the same public defender who's representing him that he's alleging, and then it's not. Right, it's not the same public defender. And then are you also agreeing that there's no showing that Kelce's performance was adversely affected by any conflict? Because we don't even know if there was a conflict. Right. I don't know that it's possible to show that because the record wasn't made. If a record was made that, you know, have the post-conviction petition filed and then say, oh, by the way, Mr. Lorak, I see that maybe there was a conflict of interest issue raised previously, you know, let me hear what you have to say about that. And then he could go through the issues and say, look, I didn't raise this ineffectiveness because of this. It's a legitimate issue. I did raise it. You're talking about if there had been an inquiry. Right. So, I mean, your main argument is per sprite, cert, and harbor that there had to be an inquiry because this was made known to the court in some fashion. Correct. The court actually raised it to a standard. Right. Well, yes, and it was agreed to by the public defender, and even the state agreed, yeah, there might be a conflict there. And so in – of all cases, you know, this isn't a case where the – frankly, I see frequently where the defendant's making this claim that, oh, I think my attorney had a conflict of interest. This is actually the judge going into it, as I said, saying, well, obviously, this is a public defender saying, yeah, you know, he did – I think it's based on the allegations he's made against our office or something like that. I think there might be a conflict there. And based on the state attorney's representation that, yeah, there might be a conflict there. This is, of all cases, one of the most important cases to actually make sure that when Donald Lork is finally appointed, that there's no existing conflict at that time. Because if there is, it really impeaches the whole post-conviction petition and the proceedings up to that point. Well, of course, in Morales, the court didn't apply Holloway because neither the defendant nor the defense counsel raised it. Right. So maybe that's something the opposing counsel might argue in his favor, that if the defendant doesn't raise it or the defense attorney doesn't raise it, maybe Morales applies. Well, defense counsel raised it in that she agreed with the court originally that there might be a conflict. And – or that, you know, based on him making allegations in the post-conviction petition against us, yeah, you know, there might be a conflict or whatever she said. So when you go from having virtually every party saying there might be a conflict here, this is something we look into, it is essentially almost a standard request in that when the judge finally appoints another public defender, you better make darn sure that that public defender doesn't have a conflict as well because of the level of concern that was raised earlier. Why is there a court's burden to do that as opposed to the defendant's? Did that mean my time was up? Go ahead. Okay. You can answer. The court, like everyone, needs to assure that the defendant is provided with adequate conflict-free counsel. And where an allegation of ineffectiveness has been made on behalf of an indigent defendant, I think it's vitally important that if the public defender doesn't say something about it, the court needs to say something about it, especially, again, given the certainty that the parties expressed to the court when the conflict issue was originally raised. Okay. You'll have time on your file. Thank you. Thank you. Mr. Jacobs? Good morning. Barry Jacobs on behalf of the people. May it please the court and counsel, given that counsel kind of moved backwards from the second issue raised, I suppose it's prudent for me to try to mimic that or respond appropriately in that fashion. Regarding the public trial issue, it's the state's position that there was no affirmative act of closure in this case, as I argued in my initial brief. And the court made it clear that it had hurt Ms. Colton's concern about family members. Well, I'm hesitant to even say that she said she was concerned about family members being present. She was concerned about a police officer being present because she phrased it as intimidation. The only evidence of the record is that she had moved to exclude witnesses and had said that a bailiff or deputy had asked her to limit the number of family members in the courtroom. Later on, during the actual jury selection, apparently this officer from Aurora was still present, and she made the statement that there were 10 family members, approximately 10 family members, that she had in the hallway or who some were in the hallway. It's unclear. And she objected to that officer being present. She said it was a question of intimidation. The court actually indicated. I can see your point. I have to look at the record. I don't think anybody's in bad concern. Maybe they have some ideas about this police officer being there. The issue is whether the family members were kept out. Would you agree or disagree that if a bailiff or a deputy sheriff tells someone they can't be in there, that's the same as the court telling someone they can't be in there? If that, in fact, was the case, yes, I would agree that it would be the same as the court. The post-conviction petition and the record supporting it, it's not. We have in second stage a motion to dismiss. I guess that is true. Yes. I'm just characterizing it as the deputy had apparently informed Ms. Colton to monitor or limit the number of chairs. It did not actually say the deputy did not exclude anyone. There's no evidence in this record that anyone was excluded. The evidence is there's 10 people in the hall and there's three chairs in the courtroom that are once being used by an officer. She casually mentioned that. There's also no evidence that anyone wished to be in the courtroom. There's no evidence that they weren't standing around the back of the courtroom. Is there any evidence based with respect to how many family members were actually in the courtroom and what the degree of relationship those family members were to the defendant? Not to my recollection, Your Honor. The Estes case that the defendants, that counsel cites in this reply brief for the proposition that it's a de facto closure based on the size of the courtroom. The Estes case also stands for the proposition that to fulfill the constitutional mandate, the court's not required to provide space for all who might like to attend. There's a balance between the openness of the courtroom and the need to prevent the distraction of participants by having a courtroom that's too small or too large. So those are competing interests. And on this record, there's simply no indication that anyone was excluded or that the court took any affirmative act of closure. So it's the state's position that there was no substantial showing based on this record and this allegation in the petition of a denial of his right to a public trial. And if we have time to turn to the first issue, unless there are questions. Go ahead. Regarding the first issue raised, that there was a conflict of interest, again, the record is at best unclear. I think it's significant to note that the conflict that is spoken of, the court actually did sua sponte inquire of the public defender, is this a case that a public defender could represent this defendant? And the public defender indicated, well, some of the allegations are against our office, as if they were concerned about a conflict. Later, the state's attorney in the courtroom, or one of them, indicated that there could be a possible conflict because the public defender's office had previously represented a witness in the case, a Willie McComb, who testified. You're talking about the time when Conflict Counsel was appointed, the original trial judge. Yes, I'm sorry. When you say later in the case, that was part of the same exchange, isn't it? Later in the same hearing, I'm sorry, yes. Yes, it was part of the same exchange. Yes, it was. Right. Not later in the case. If I said that, I misspoke. Later in the same exchange or later in the same hearing, it was said that potentially there was a possible conflict because the public defender had previously represented a witness in the case, a Willie McComb, and they represented that witness on a rule to show cause to compel his testimony. It's also clear from the record that Willie McComb was represented at trial by someone other than the public defender's office. It's the state's position that there is, and I believe counsel has treated this all, as a per se conflict of interest being shown. That's simply not the case. The court did actually make an inquiry after the state's attorney made the representation, saying, oh, a possible conflict, and appointed first, I don't remember which counsel, Ms. Hess. Let me ask you something. You're indicating that the court was made aware at that hearing where conflict counsel was appointed that there was a, quote, possible conflict, unquote, correct? Right. Now, applying Spreitzer and Hardin as the Supreme Court has delineated this as conflict, I don't know that counsel's argument was a per se because he argued a few minutes ago that the record didn't establish a conflict but that the court had to inquire before the court appointed this loader. He did agree there was no showing of an actual conflict. I believe that's a different question than the per se conflict at that initial hearing. He said could be a conflict. Yes, at the initial hearing, it could be a conflict. And under Hardin, that case also gets to the level of inquiry necessary. As I began to say, the court in this case did make inquiry, did appoint conflict counsel. At some later time, when Donald Lorik appeared, the court, this was over the course of a couple of years, I should point out, the court and another conflict counsel had actually been appointed in the meantime. But Donald Lorik was, the court rather did inquire both Lorik and the conflict counsel at that time saying, can the public defender's office take this case? And the answer was yes. So what inquiry was that? Pardon? What did the inquiry consist of? The inquiry consisted of him questioning both the conflict counsel and the public defender's office. One question to the public defender, was it not the equivalent of are you going to enter your appearance? Isn't that what the question, the one question was posed to the public defender? The case actually had been continued one prior date. And it was who's going to enter? That prior date was let me know who's going to enter, right? That was also the equivalent of one sentence. Correct. Okay. So are you calling that an inquiry? Yes. An inquiry into what? The inquiry would be can the public defender accept the case? Now, that wasn't the, those weren't the words that were used. Were they counsel on the record? Not specifically, no. And so how are we to infer that that's what the court meant? This is a different judge now, correct? Yes, it was. Okay. So how, based on the fact it's a different judge and there's nothing else in the record, how are we to infer what you've just indicated? It's my position that, or the state's position, that the case was continued for the purpose of determining who would be representing the defendant, be the public defender or a conflict counsel. At that second date, when the court asked the public defender, Donald Lorick, who's in, I don't think that's a specific words or exact words, the public defender said, yes, the public defender can now take this case. But that question is not, was not made to determine whether there was a competing or different interest. I think what you're saying, if I'm understanding you, is that when that time was taken between cases, between the first time or the second or third time the case was in court versus the time when they came back and the judge says who's going to represent, the conflict was actually being resolved in that time period. And the inquiry the court was making was not to determine whether there was a conflict. The question was to determine, did you resolve the conflict and who's coming in? Is that what you're saying? That is what I am, in fact, saying. But you're not saying that question, who's coming in, is a question, the question that's required under people versus free, to determine whether there are competing interests, vice versa. No, actually, under Hardin, I don't believe the inquiry has to be that specific. In Hardin, there was a question of a conflict between post-conviction counsel and trial counsel, a subset question, not a question of representation. And in determining what the court's duty was, they allowed a very cursory inquiry akin to this, in this case, saying that there was no conflict. I would also submit that who better than the public defender's office knows if there's a conflict based on representation of a prior witness. The record is clear. At trial, the public defender did not represent Willie McComb. So you're saying regardless, that is, the public defender is the one who would determine whether or not there's a conflict and the trial judge has no further obligation other than asking the public defender whether they believe there's a conflict. I'm not going that far, Your Honor. Okay. I'm simply saying that in all likelihood, if this case were remanded, the inquiry would be of the public defender's office whether or not there was a conflict of interest which represented this defendant. Their inquiry would be- And their answer, yes or no, the trial judge is supposed to take that without further inquiry under the case law? I believe under Harden, the inquiry can be very cursory. Based on the nature of the inquiry, it has to be tailored to what the allegation of conflict is. Well, that's true. But in this case, there was a determination by a trial judge because conflict counsel was entered, or the appearance of conflict counsel was entered, that there was a conflict or a potential conflict. So we're starting in a different place, are we not, than some of the other facts in these cases? I don't believe different from Harden. There was acknowledgement of a possible conflict. The court at that point could have determined whether or not a conflict actually existed by inquiring or conducting a hearing or inquiring a law defender further, but instead out of an abundance of caution, chose to appoint conflict counsel. Later on, two years later, and after a couple of hearings where this issue had maybe not been explicitly addressed, although it had been prior to Lorick's appearance, Donald Lorick's appearance, phrased as who's going to be here? So at the following hearing, Donald Lorick indicated the public defender can now accept representation. It's the state's position that that was an inquiry that was necessary based on the allegation of conflict, that this public defender's office had previously represented a witness in the case. If we were to find that an inquiry was not made, or a proper inquiry was not made, and we remanded it for that purpose, wouldn't we also have to vacate the trial court's ruling regarding the public trial and send that back because if the trial court were to find there would be a conflict, a new attorney would be appointed and could file an amended PCP, correct? In all likelihood, yes. In this case, there's no question that Donald Lorick's representation of the defendant was beyond reproach. He explicitly complied with the law. No one's calling that into question at all. The court made a proper inquiry, not whether somebody was unethical. I don't think anybody's saying that. And as you indicated, part of the problem in this case is it lasted too long. It lasted three years and three judges and a bunch of attorneys, and by the time the third year came along, nobody knew what the people in the beginning were doing. Correct, but it is our position that the public defender would be the best and most likely evidence to determine whether or not a conflict actually existed between the public defender's office and a defendant. Well, how do we know then under that fact scenario that the state was privy to that information as well and agreed? The state originally raised it in front of the first judge that there was a potential conflict. Initially, but I'm talking about later on. There was no objection by the state to the appointment of the public defender, Donald Lorick, by the state, which is significant. Had the state's – I don't believe it was the same state's attorney, but had the state believed there was a conflict that continued three years later, the state would have objected to the appointment of Donald Lorick. But he was still maintained. What about the person whose reasonable right to have an attorney represent on a post-conviction petition, not a 6th Amendment right, but a reasonable representation? What about that person? That person wasn't there when all this happened. And in Hardin, at least the court had the defendant's letter. That's the inquiry that the court made, or the minimal inquiry the court made. The court had a letter from the defendant saying that this is my problem with this guy, and then the court made some inquiry into that. We don't know what the defendant thought when Lorick was appointed. That's correct, Your Honor. We don't know what the defendant thought when any conflict counsel was appointed. However, as I indicated, there's no quarrel with the representation provided by Donald Lorick. He never objected. He never objected. There's been no objection raised in this appeal. There's been no indication, as I said, that Donald Lorick's representation was anything other than in compliance with Rule 651C. Okay. Thank you. Mr. Wilson? Thank you. I'm going to begin where I began the argument with what the standard is. Mr. Short pled that his right to a public trial was violated. His allegations were to be taken as trueness. There's something in the record saying rebutting his allegations. That's not present here. As Your Honors have been questioning each of us, it's apparent that there remain some questions. Who was excluded from the courtroom? What actions were taken? What did some of the representations made in court mean? That's why this case needs to go back to a third stage hearing, so there could be an evidentiary hearing, to flush these things out, to figure out, okay, how many chairs were there available? Was there a limited seating because the jurors were coming in? And could the judge have, you know, cut the veneer or whichever panel was going to be questioned in half and give the remaining room to the family members? We don't know as this case now sits. What we do know is Mr. Short pled it. It's a substantial constitutional violation, both, you know, the Sixth Amendment and Article I, Section 8 of the Illinois Constitution, and there's nothing in the record rebutting it. There is some regarding the size of the courtroom. I believe there were some questions about, you know, the judge didn't exclude anyone specifically from the courtroom. It's more of a de facto closure. And I know that it's non-presidential. I cited a Rhode Island case, People v. Torres, that almost deals with this exact same issue. And there's some language in Torres that's just a sentence I'd like to read because I think it sums up what's going on here. It says, his, and they're talking about the judge, brief references to the practical challenges of such a small courtroom and the limited number of seats available were not sufficient to demonstrate an overriding interest to remain in such a posture to the exclusion of the family members. That's exactly what we're talking about here. The judge needed to do something because we do know that if the bailiff is asking defense counsel to lessen the number of family members who are in the courtroom, somebody's got to lead. And, you know, the bailiff or the deputy or court security is an extension of the judge. This case is really no different than if the court were holding trial and the court was made aware that the employees had left for the day and locked the courthouse doors. It's not an action that the judge has taken, but the judge has been put on notice that there has been something happened that is going to discourage or, in that case, prevent the public from attending the trial. If we could turn to the other issue for a minute. Sure. Do you agree with counsel that your position is that there was a per se conflict? No, no. This is, frankly, just an example of a case that's gone on way too long that looks like it's fallen through the cracks. Mr. Short wasn't there when the last attorney was appointed to represent him. And earlier there was a question regarding the applicability of Holloway and some of the things that Holloway says. Holloway also points out that the judge failed to appoint separate counsel or to take adequate steps to ascertain the risk was too remote to warrant separate counsel. That's exactly what happened here. The judge— You know, Holloway and Kyler v. Sullivan were really relied upon by Hardin and Streitzer, and that created this whole, you know, this whole, I guess, way of viewing conflict and method of troubles, viewing conflict, counsel. I mean, if Holloway and Kyler v. Sullivan have now been severely limited and the system that we have actually was recently cited by Justice Souter in a concurring opinion, not the majority opinion, I mean, what effect does that have on all this? What effect does that have on Hardin and Streitzer if Holloway and Kyler v. Sullivan had been severely limited by Nickens? And nobody's really argued that, but— I think—and I think this addresses your question. I think what's vitally important is that no matter what precedent we find to be the authoritative precedent or whatever is the existing precedent, the right of Mr. Stewart to conflict-free counsel is what needs to win the day here. And in this case, we can't say based on this record that that was what was provided to him. You have—all the parties are different, and Mr. Stewart, the one thread that runs central in all of this case through the extensive length of it, isn't even in court the day that the Public Defender's Office assumes his representation. And I would agree with this court as to their interpretation of what was said when the court was, as I view it, scheduling who was going to be present in the courtroom during those various days. It wasn't an inquiry into, Mr. Lark, do you believe that a conflict still exists? May I finish just briefly? Yes. It wasn't an inquiry into whether a conflict still existed. It was simply, is somebody going to be here to represent this guy? I'd really like somebody to be here. And that is not sufficient, no matter what the precedent is that you're looking at. Thank you, Your Honor. At this time, the court will take the matter under advisement and render a decision in due course. The court stands in brief recess.